UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREEN SAVANNAH LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>ADOBE INC.,<br><br>  Defendant. | Case No. 20-cv-05568-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 21 |

Before the Court is a motion to dismiss filed by Defendant Adobe, Inc. ("Adobe"). ECF No. 21. The Court will grant the motion.

## I. BACKGROUND[1]

For approximately six years, Plaintiff Green Savannah LLC ("Green Savannah") sold Adobe software on eBay.com under the merchant name "Jacevoid." Complaint ("Compl."), ECF No. 1 ¶ 14. Green Savannah neither entered into a licensing agreement with Adobe nor was it an assignee or sub-licensee of any license agreement between Adobe and a third party. *Id.* ¶ 17. Green Savannah is also not an "authorized reseller" of Abode software. *Id*. Green Savannah maintains that its operation did not infringe on Adobe's copyright, however, because it only offered and sold genuine Adobe software which it lawfully acquired from third parties who owned – rather than licensed – the software. *Id*. ¶¶ 15-16. Resale of the software was thus permissible under the "first sale doctrine." *Id.* ¶ 13.

Green Savannah alleges that "[w]ithin approximately one year of Plaintiff opening its eBay store, [Adobe] began targeting [its business]" by knowingly submitting "numerous bogus" notices

---

[1] For the purposes of this order, the following allegations in the complaint are taken to be true. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

1  of copyright infringement to eBay under the Digital Millennium Copyright Act ("DMCA"), 17
2  U.S.C. § 512.  *Id.* ¶¶ 19-20.  In response to these takedown notices, eBay temporarily removed or
3  disabled Green Savannah's listings.  *Id.* ¶ 20.  eBay reinstated the listings after Green Savannah
4  submitted DMCA "counter notices" to confirm its right to sell the software.  *Id.* ¶ 26.  Green
5  Savannah alleges that the delisting of its products caused it to lose business and sales.  *Id.*

6      DMCA procedures permitted Adobe to dispute Green Savannah's counter notices by filing
7  an infringement lawsuit, but no lawsuit was filed.  *Id.* ¶ 21.  Instead, Green Savannah alleges that
8  in 2019, Adobe "sidestepped the DMCA procedures in order to prevent Plaintiff from submitting
9  counter notices" by making false statements directly to eBay that Green Savannah "was selling
10 'counterfeit' and/or illegal products, and/or infringing Adobe software."  *Id.* ¶ 22.  Adobe's
11 complaints allegedly caused eBay to terminate its relationship with Green Savannah in March
12 2020.  *Id.* ¶ 27.  Green Savannah's subsequent attempts to reinstate its eBay account failed.  *Id.* ¶
13 28.

14     Green Savannah now brings four causes of action.  First, Green Savannah alleges that
15 Adobe violated 17 U.S.C. § 512(f) because Abode's DMCA notices knowingly misrepresented
16 that Green Savannah was infringing on Adobe's copyrights.  *Id.* ¶¶ 30-34.  Second, Green
17 Savannah seeks relief for (1) intentional interference with contractual relations and (2) intentional
18 interference with prospective economic advantage because Abode's allegedly false statements to
19 eBay beginning in 2019 caused eBay to remove Green Savannah from the platform.  *Id.* ¶¶ 35-50.
20 Finally, Green Savannah brings a claim for violation of the California Unfair Competition Law
21 ("UCL") because Abode filed inaccurate DMCA notices and made false statements to eBay "in an
22 effort to monopolize the marketplace and prevent the lawful resale of Adobe software."  *Id.* ¶¶ 51-
23 57.  Abode moves to dismiss Green Savannah's complaint.  ECF No. 21.  Green Savannah filed an
24 opposition, ECF No. 28, to which Adobe replied, ECF No. 29.

25 **II.   JURISDICTION**
26     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.
27 **III.  LEGAL STANDARD**
28     A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in original) (quotation marks omitted). While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).

## IV.   DISCUSSION

Adobe argues that Green Savannah's complaint should be dismissed because (1) Green Savannah fails to sufficiently allege a claim under 17 U.S.C. §512(f) because the complaint itself establishes that the DMCA notices were accurate and that Adobe had a subjective good faith belief that Green Savannah's sales and distributions of Adobe software on eBay.com violated the terms of Adobe's software license and (2) the common law and state law causes of action are preempted by federal law. ECF No. 21 at 6-7.[2] The Court will dismiss Green Savannah's Section 512(f)

---

[2] Adobe initially argued that all of Green Savannah's claims were also time barred. ECF No. 21 at 23-24. However, Adobe now maintains only that any DMCA claims based on takedown notices issued prior to August 11, 2017 are barred. ECF No. 29 at 14-15. The Court holds that Green Savannah's claims are timely because Green Savannah limits its claims to the three-year statute of limitations period. *See* Compl. ¶¶ 31, 32 ("Over the last three years, and on numerous occasions,

1  claim because Green Savannah has not adequately alleged that Adobe knew the DMCA takedown
2  notices were false when issued.  The Court will dismiss Green Savannah's other claims because
3  the UCL claim is preempted by the DMCA and the tortious interference claims, while not clearly
4  preempted, are inadequately pleaded.

### A.    17 U.S.C. § 512(f) Claim

Adobe argues that Green Savannah's claim under 17 U.S.C. § 512(f) must be dismissed because Green Savannah has not, and cannot, sufficiently plead that Adobe knowingly misrepresented to eBay that Green Savannah's Adobe software listings were infringing.  ECF No. 21 at 7.  First, Adobe contends that the Section 512(f) claim must be dismissed under *Adobe v. Christenson*, 809 F.3d 1071 (9th Cir. 2015), because the takedown notices were accurate assertions of Adobe's intellectual property rights.  *Id.* at 13.[3]  Second, Adobe argues that Green Savannah's claim fails because the complaint itself establishes that Adobe had a subjective good faith belief that Green Savannah's sales were infringing when Abode issued the DMCA notices.  *Id.* at 19.  Green Savannah responds that it pleaded, or is capable of pleading, that Adobe knowingly filed false DMCA notices because it did not file an infringement lawsuit and chose to circumvent the DMCA process by filing complaints directly with eBay to avoid DMCA counter notices, *id.* at 14-15. at 14-15.

Under the DMCA, "[a]ny person who *knowingly* materially misrepresents . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorney's fees,

---

Defendant knowingly misrepresented to eBay [through false DMCA notices] that Plaintiff was infringing on Defendant's copyrights by offering for sale and selling Adobe software on eBay.").
[3] Adobe argues that the first sale doctrine does not apply because it only licenses its software.  *Id.* at 13-19; *see, e.g.*, *Vernor v. Audodesk, Inc.*, 621 F.3d 1102, 1107 (9th Cir. 2010).  In *Adobe Sys. Inc. v. Christenson*, the Ninth Circuit explained that a "party asserting a first sale defense must come forward with evidence sufficient for a jury to find lawful acquisition of title, through purchase or otherwise, to genuine copies of the copyrighted software.  To the extent that the copyright holder claims that the alleged infringer could not acquire title or ownership because the software was never sold, only licensed, the burden shifts back to the copyright holder to establish such a license or the absence of a sale."  809 F.3d at 1079.  Green Savannah's complaint does not allege the source of the allegedly infringing software, that it was lawfully purchased, or when it was sold.  The Court therefore cannot determine if Adobe's software was licensed at the relevant time and so cannot consider the first sale doctrine.  For the same reasons, the Court does not reach Adobe's request for judicial notice of its General Terms of Use license agreements from 2014 through 2020.  *See* ECF No. 21 at 16.  These documents are irrelevant to the Court's analysis.

4

1  incurred by the alleged infringer . . . as the result of the service provider relying upon such
2  misrepresentations in removing or disabling access to the material or activity claimed to be
3  infringing." 17 U.S.C. § 512(f) (emphasis added). "To state a claim for misrepresentation under
4  § 512(f), [p]laintiffs must allege that [a defendant] 'knowingly and materially misrepresent[ed]'
5  that copyright infringement has occurred, that [the service provider] 'relied' on such
6  misrepresentations, and that [p]laintiffs have been 'injured' as a result." *Automattic Inc. v. Steiner*,
7  82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015) (citing *Online Policy Grp. v. Diebold, Inc.*, 337 F.
8  Supp. 2d 1195, 1204 (N.D. Cal. 2004)). Under Section 512(f), "[a] copyright owner cannot be
9  liable simply because an unknowing mistake is made, even if the copyright owner acted
10 unreasonably in making the mistake. Rather, there must be a demonstration of some actual
11 knowledge of misrepresentation on the part of the copyright owner." *Lenz v. Universal Music*
12 *Corp*, 815 F.3d 1145, 1154 (9th Cir. 2016) ("*Lenz II*") (citing *Rossi v. Motion Picture Ass'n of Am.*
13 *Inc.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004). The Section 512(f) knowledge requirement is thus
14 subjective, rather than objective.[4]

15 To state a claim under Section 512(f), Green Savannah must plead facts supporting an
16 inference that Abode *knowingly* made material misrepresentations when filing the DMCA
17 takedown notices. Specifically, Green Savannah must allege that Abode held a good faith
18 subjective belief that the disputed software was non-infringing when it issued the notices. Green
19 Savannah pleads that:

> Defendant knew that its Notices were false and that the Notices would cause
> Plaintiff damages. In particular, on information and belief, Defendant knew
> or should have known that it had not retained title to the Adobe software
> that Plaintiff offered for sale and sold on eBay. As such, and on information
> and belief, Defendant knew or should have known that Plaintiff's listings
> and sales of Adobe software on eBay were covered by the first sale doctrine,

---

[4] Green Savannah asserts that "knowingly means that a party actually knew, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations." ECF No. 28 at 14 (citing *Automattic*, 82 F. Supp. 3d at 1026). *Automattic* is a district court case relying on the definition of "knowingly" first articulated in *Diebold*, 337 F. Supp. 2d at 1204, another district court case that preceded the Ninth Circuit's decision in *Rossi*. This Court is bound by Ninth Circuit precedent, and to the extent that these definitions are contradictory, the Court will apply the definition of "knowingly" articulated in *Rossi* and recently reaffirmed in *Lenz II*.

United States District Court
Northern District of California

> and that Plaintiff was not infringing on Defendant's copyrights. Likewise, on information and belief, Defendant neglected to consider Plaintiff's fair use before sending the Notices under the DMCA.

Compl. ¶ 33. Green Savannah alleges that its conduct was lawful under the first sale doctrine because the software it was selling had been purchased rather than licensed. *See* Compl. ¶¶ 13-14. However, Green Savannah has not alleged how it purchased the software – let alone that Adobe knew the software had been purchased rather than licensed. Green Savannah attempts to explain how it acquired the software in its opposition brief, but the Court cannot consider these facts when deciding the motion to dismiss. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197, n.1 (9th Cir. 1998) ("The 'new' allegations contained in the [plaintiff's] opposition motion, however, are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers.") (emphasis in original). Indeed, that information regarding how Green Savannah acquired the software can only be found in Green Savannah's briefing, and not its complaint, borders on a concession that the complaint as pleaded is insufficient.[5] Green Savannah's complaint actually supports Adobe's position that it had a good faith belief that Green Savannah was infringing because the complaint both acknowledges that Adobe licenses its products and asserts that Green Savannah never entered into a licensing agreement with Adobe. *Id.* ¶ 17. The Court holds that Green Savannah has not alleged that Abode either knew that the first sale doctrine applied or failed to consider Green Savannah's fair use before issuing the takedown notices.

Green Savannah also argues that Adobe knew its DMCA notices were false because it (1) threatened to file a lawsuit against Green Savannah, but did not sue, and (2) filed complaints directly with eBay to prevent Green Savannah from submitting DMCA

---

[5] Factual allegations in Green Savannah's opposition brief that were not included in the complaint include that "[t]he type of Adobe Software sold by Plaintiff was manufactured between 2006 and 2012, and was distributed on CD-ROM or DVD-ROM with activation keys . . . the Software was not subscription based, and prior to purchasing the Software, the purchaser was not required to agree to any terms and conditions." ECF No. 28 at 7.

1  counter notices. ECF No. 28 at 14-15. These allegations are insufficient.

2  The Court first notes that although Green Savannah alleges that Adobe did not sue
3  Green Savannah for infringement and circumvented the DMCA process by submitting
4  complaints directly to eBay, the complaint does not contend that these facts support a
5  finding that Adobe knew its DMCA notices were false. *See* Compl. ¶¶ 21-22. However,
6  even assuming that the complaint adequately connects these allegations to Section 512(f)'s
7  knowledge requirement, they are not "enough to raise a right to relief above the speculative
8  level," *Twombly*, 550 U.S. at 555, and the complaint "stops short of the line between
9  possibility and plausibility of entitlement to relief," *Iqbal*, 556 U.S. at 678. It may be
10 possible that Adobe's decision not to file a lawsuit against Green Savannah and its
11 complaints to eBay outside of the DMCA process could support Green Savannah's theory
12 that Adobe knew its DMCA notices were false, but there are a myriad of more plausible
13 explanations for Adobe's conduct. For example, Adobe may have avoided filing a lawsuit
14 because of the time and cost associated with litigation. Contacting eBay directly likely
15 presented a means of more efficiently and inexpensively protecting what Adobe believed
16 to be its intellectual property rights. Without more, the Court cannot conclude that
17 Adobe's decision not to file a lawsuit against Green Savannah and to file complaints
18 directly with eBay rather than through the DMCA process support Green Savannah's
19 contention that Adobe knew its DMCA notices were false.

20 Absent facts demonstrating that Adobe knew the software was non-infringing when
21 filing the DMCA takedown notices, the complaint merely alleges the legal elements of the
22 claim – knowing misrepresentation – without providing a sufficient factual basis in
23 support. This is insufficient. *See Iqbal*, 556 U.S. at 678 (on a motion to dismiss,
24 "[t]hreadbare recitals" of the elements of a cause of action, supported by mere "conclusory
25 statements," do not suffice). The Court grants Adobe's motion as to this claim with leave
26 to amend.

27     **B.**    **Other Claims**

28 Adobe argues that Green Savannah's claims for intentional interference with

1    contractual relations, intentional interference with prospective economic advantage, and
2    unfair competition are preempted because the DMCA preempts state law claims arising out
3    of the submission of DMCA infringement notices. ECF No. 21 at 21. Adobe contends
4    that the UCL claim is further preempted by the Copyright Act because (1) the subject
5    matter of the state law claim falls within the subject matter of copyright and (2) the rights
6    asserted under state law are equivalent to the rights protected by the Copyright Act. *Id.* at
7    22 (citing *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (1998)). Green Savannah
8    responds that these claims are not preempted insofar as they pertain to Adobe's false
9    statements to eBay in 2019, which were made after Adobe stopped submitting DMCA
10   takedown notices. ECF No. 28 at 17-19. Adobe replies that Green Savannah pleaded no
11   facts to illustrate that its relationship with eBay was terminated due to Adobe's allegedly
12   false statements rather than the DMCA notices. ECF No. 29 at 14.

13   A claim is preempted by the Copyright Act when: (1) "the 'subject matter' of the
14   state law claim falls within the subject matter of copyright" and (2) "the rights asserted
15   under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates
16   the exclusive rights of copyright holders." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d
17   1134, 1137-38 (9th Cir. 2006). However, the Ninth Circuit has also applied conflict and
18   field preemption when state law provisions do not deal with rights equivalent to those
19   found in the Copyright Act. *See In re World Auxiliary Power Co.,* 303 F.3d 1120 (9th Cir.
20   2002). Relying on cases like *Auxiliary Power*, courts in this district have held that the two-
21   part test is not the exclusive means for preempting a claim under the Copyright Act, *see,*
22   *e.g.*, *Lenz v. Universal Music Corp.*, No. C 07-03783 JF, 2008 WL 962102, at *4 (N.D.
23   Cal. Apr. 8, 2008) (*Lenz I*), and "have found that the DMCA preempts state law claims
24   arising out of the submission of infringement notices," *Stardock Sys., Inc. v. Reiche*, No. C
25   17-07025 SBA, 2019 WL 8333514, at *4 (N.D. Cal. May 14, 2009).

26   In *Diebold*, the court held that state law claims related to the submission of
27   allegedly false DMCA infringement notices were preempted. The court explained:
28   
> Preemption occurs when compliance with both state and federal [laws] is a

8

> physical impossibility or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Even if a copyright holder does not intend to cause anything other than the removal of allegedly infringing material, compliance with the DMCA's procedures nonetheless may result in disruption of a contractual relationship: by sending a letter, the copyright holder can effectuate the disruption of ISP service to clients. If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law. To the extent that Plaintiffs argue that there is no conflict because Diebold's use of the DMCA in this case was based on misrepresentation of Diebold's rights, their argument is undercut by the provisions of the statute itself. In section 512(f), Congress provides an express remedy for misuse of the DMCA's safe harbor provisions. It appears that Congress carefully balanced the competing interests of copyright holders, ISPs, and the public, by providing immunity subject to relief for any misuse of the statute.

*Diebold*, 337 F. Supp. 2d at 1205-06 (quotation marks and citations omitted). This logic has been adopted by other courts in this district and stands "for the propositions that (1) a DMCA Takedown Notification is a creature of a federal statutory regime, and (2) that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification." *See Amaretto Ranch Breedables, LLC v. Ozimals*, Inc., No. C. 10-05696 CRB, 2011 WL 2690437, at *3 (N.D. Cal. July 8, 2011).

However, courts have also held that claims are not preempted when they are based on complaints other than DMCA takedown notices or other infringement notices. *See Lenz I*, 2008 WL 962102, at *4 ("[B]ecause it is possible that Lenz may be able to allege that the take down notice was based on YouTube's Terms of Use policy rather than the DMCA leave to amend will be granted."); *Rock River Comm., Inc. v. Universal Music Grp., Inc.*, No. CV08–635 CAS (AJWx), 2011 WL 1598916, at *15 (C.D. Cal. Apr. 27, 2011) ("[B]ecause the [c]ourt finds that the DMCA is not applicable to the instant dispute [because the cease-and-desist letter at issue was not a DMCA takedown or infringement notice], it concludes that the DMCA does not preempt the tort action.").

The Court finds the reasoning of these courts to be persuasive. The DMCA provides a comprehensive notice and takedown scheme regulating the submission of false infringement notices. *See* 17 U.S.C. § 512(f) (creating liability for "knowingly materially misrepresent[ing]"

infringement). Because simultaneous liability under state tort law and the DMCA creates an irreconcilable conflict between state and federal law, the Court holds that any state law claims predicated on the submission of DMCA infringement notices are preempted. *Lenz I*, 2008 WL 962102, at *4 ("Given that a special provision of the Copyright Act [17 U.S.C. § 512(f)] itself regulates misrepresentation in such notifications, that provision constitutes the sole remedy for a customer who objects to its contents and their effects." (quoting 1 Melville B. Nimmer & David Nimmer, 1 *Nimmer on Copyright* § 1.18[A][1] (2019))).

Applying these principles, the Court holds that Green Savannah's claims for intentional interference with contractual relations and intentional interference with prospective economic advantage are not preempted by the DMCA. The complaint distinguishes between Adobe's "Misrepresentative DMCA Notices" and Adobe's "False Statements" to eBay, *compare* Compl. ¶ 20 (describing Adobe's alleged "bogus" DMCA notices) *with* ¶ 22 (describing how Adobe "sidestepped the DMCA procedures" and made "False Statements" directly to eBay that alleged Green Savannah's product may have been counterfeit, illegal, or infringing), *id.* ¶¶ 35-50 (the intentional interference causes of action exclusively reference Adobe's alleged "False Statements" to eBay and the harm caused by those statements). To the extent that Green Savannah's tortious interference claims arise from a non-DMCA governed takedown notice – such as "False Statements" to eBay that alleged that Green Savannah's software was counterfeit or violating laws other than the DMCA – the claims are not preempted. *See River Rock,* 2011 WL 1598916, at *15.[6]

However, Green Savannah's state law claims still must be dismissed. The causes of action for intentional interference with contractual relations and intentional interference with prospective

---

[6] The Court notes that state law claims arising out of infringement notices can be preempted by the DMCA when the infringement notice is functionally equivalent to a DMCA notice. *See, e.g., TINE BAK LLC v. SELKATZ, INC. d/b/a THIS OLD GAL, et al.*, CV 20-5065 DSF (SK), 2020 WL 9074806, at * 4-6 (N.D. Cal. Nov. 30, 2020) (finding that an infringement notice sent directly to an internet service provider was functionally a DMCA notice and preempting a state law tort claim based on the infringement notice). The Court does not consider whether Adobe's "False Statements" to eBay were functionally DMCA notices because Adobe does not argue that they were and the complaint offers little information about their content. The Court may revisit this preemption issue if an amended complaint is filed.

economic advantage both require the plaintiff to prove that the contractual interference caused damage to the plaintiff.[7]  The complaint alleges that "[i]n March of 2020, as a direct and proximate result of Defendant's wrongful conduct, eBay terminated Plaintiff's eBay account, rendering performance under Plaintiff's contract more expensive or difficult (and actually impossible) as Plaintiff's ability to sell any software on eBay was prevented."  Compl. ¶¶ 40, 48.  But the complaint does not allege that Adobe's "False Statements" to eBay, rather than DMCA notices, were the reason that Green Savannah's contract with eBay was terminated.

While the proximity in time between Adobe's allegedly false statements in 2019 and the software being removed from eBay in 2020 supports a finding that Abode's contact caused the takedown, the complaint does not allege when, or if, Adobe's DMCA and infringement notices stopped.  The complaint merely alleges that Abode began to make false statements – that were not necessarily infringement notices – to eBay in 2019.  *See id.* ¶4 ("However, over the last year, Defendant escalated its misconduct, and sought to bypass eBay's DMCA procedures by, among other things, falsely reporting to eBay that Plaintiff was selling "counterfeit" Adobe software."); *id.* ¶ 22 ("beginning in 2019, Defendant sidestepped the DMCA procedures in order to prevent Plaintiff from submitting counter notices").  Absent allegations that Adobe stopped filing DMCA and infringement notices with eBay after Green Savannah's content was re-listed, the Court cannot determine whether eBay took down Green Savannah's page because of Adobe's complaints about alleged copyright infringement or Adobe's other allegedly false statements.[8]  Moreover, the Court

---

[7] "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).  Similarly, the elements of intentional interference with prospective economic advantage are "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Id.* at 1126 n.2.

[8] The Court notes that Green Savannah alleged that "[Adobe] stopped sending DMCA notices in 2019" in its opposition brief, ECF No. 28 at 6.  As noted earlier, the Court cannot consider

11

notes that the complaint fails to detail the nature of Adobe's "False Statements," including when they were made, how they were made, and if eBay noticed Green Savannah about the "False Statements." These facts would help the Court assess if Green Savannah has plausibly alleged that Adobe's "False Statements" rather than DMCA or infringement notices caused eBay to remove Green Savannah's listings.

Without support for Green Savannah's assertion that Adobe's "False Statements" caused eBay to terminate Green Savannah's contract, Green Savannah's claims for tortious interference must be dismissed, As pleaded, the complaint merely recites an element of the causes of action – damages caused by the unlawful interference – without a factual basis. *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (citations omitted). The Court therefore grants Adobe's motion to dismiss the tortious interference claims with leave to amend.

Finally, the Court holds that Green Savannah's UCL claim fails. The complaint alleges that Abode's conduct "including [Abode's] submission of bogus DMCA Notices and its communication of the False Statements to eBay" are "'unfair' and "unlawful" practices in violation of the UCL. Compl. ¶¶ 53, 54. Because the claim explicitly arises out of the submission of DMCA takedown notices, it is preempted. *See Lenz I*, 2008 WL 962102, at *4. Any UCL claim based on Adobe's alleged tortious interference resulting from its "False Statements" fail for the reasons discussed above.

## CONCLUSION

For the foregoing reasons, the Court grants Abode's motion to dismiss Green Savannah's complaint. Green Savannah is granted leave to amend all claims, to the extent that it can do so

/ / /

/ / /

---

allegations raised outside of the complaint when deciding a motion to dismiss. *See Schneider*, 151 F.3d at 1197, n.1.

12

without contradicting its prior pleadings and representations or the rulings in this order. An amended complaint is due 21 days from the date of this order. Failure to timely file an amended complaint will result in dismissal of the claims with prejudice.

The case management conference currently scheduled for May 11, 2021 is continued to July 13, 2021 at 2:00 p.m. An updated joint case management statement is due July 6, 2021.

**IT IS SO ORDERED.**

Dated: May 5, 2021

JON S. TIGAR
United States District Judge